## State of Vermont v. David Kettlewell

[544 A.2d 591]

No. 84-264

Present: **Allen, C.J., Dooley, J., and Barney, C.J. (Ret.), Keyser, J. (Ret.) and Costello, D.J. (Ret.), Specially Assigned**

Opinion Filed December 24, 1987

Motion for Reargument Denied February 17, 1988

*Jeffrey L. Amestoy*, Attorney General, *Susan R. Harritt* and *Elizabeth J. Grant*, Assistant Attorneys General, and *Stephen Norten,* Law Clerk (On the Brief), Montpelier, for Plaintiff-Appellee.

*David W. Curtis*, Defender General, and *Henry Hinton* and *William A. Nelson*, Appellate Defenders, Montpelier, for Defendant-Appellant.

**Allen, C.J.** Defendant appeals his conviction of possession of marijuana in violation of 18 V.S.A. § 4224. He contends the trial court erred in denying his motion to suppress the marijuana as evidence at his trial. We agree that the marijuana was the product of an unlawful search and vacate the conviction.

In the early evening of June 2, 1983, the town constable of Bakersfield, Vermont, provided the following information to a state police officer:

> I told him that Dave Kettlewell was on my land, that he had brought two people that were Mexican onto my property, that I did not know whether they were legal or not legal. I told him that there was a drug deal involved, and that I had had prior knowledge of it.

The constable further stated that the defendant had parked a truck with an attached travel trailer on his land, and that he wanted the vehicles removed.

Based on the constable's report, the trooper thought there might be illegal aliens on the property. He contacted the United States Border Patrol, and he and a Border Patrol agent drove to the constable's property to investigate. The vehicles described by the constable were located at a remote campsite on the property, accessible by a dirt road. The trooper and agent arrived at the campsite, approached the camper and truck, and observed that both vehicles had Texas license plates. The agent, who had worked as a Border Patrol agent on the Texas-Mexico border, overheard a conversation in a Mexican dialect of Spanish between two men in the trailer. He also observed that the camper was of the type "used on numerous occasions, a type to smuggle illegal aliens, because of the concealment it offers."

The agent decided to speak to the trailer's occupants about their immigration status. With his pistol drawn and the trooper

covering him with a shotgun, the agent knocked on the trailer door and asked its occupants to come out. After a brief period, two men emerged from the camper. The agent looked quickly inside the open door for other occupants and then took the two men away from the trailer for questioning. One of the men produced an immigration form identifying him as a legal United States resident. The other man stated he had no immigration documents and admitted that he was illegally in the country. The agent then arrested both men on immigration violations charges.

At the request of the agent, the trooper searched the trailer's interior, looking for the defendant and other illegal aliens. Based on the constable's report and the trooper's knowledge from other sources that the defendant might be violent, the officers wished to secure the area for their safety. While searching inside the trailer, the trooper came upon a large quantity of marijuana. After he came out, the agent searched the trailer for further evidence of immigration violations. During this search, he also observed the marijuana. Based on his discovery of the marijuana, the trooper seized the trailer and had it towed to the State Police barracks. After testing and confirming that what he had found was marijuana, he conducted a more thorough investigation of the trailer, and inventoried its contents.

Defendant was charged with possession of the marijuana after it was determined that he was in control of the trailer during the time it contained the marijuana. Defendant moved to suppress evidence of the marijuana, contending that the preliminary and inventory searches which yielded it were unlawful. The trial court denied the motion, and evidence of the marijuana was admitted at defendant's trial. Defendant was found guilty by jury verdict, and appeals from this judgment.

The defendant renews his challenge on appeal to the validity of the preliminary and inventory searches of the camper-trailer. The State contends that the searches were valid as incident to the lawful arrest of the trailer's occupants for immigration violations, under *New York* v. *Belton*, 453 U.S. 454, 457, *reh'g denied*, 453 U.S. 950 (1981).

The arrest of the trailer's occupants was prompted by the admission of one of the occupants that he was an illegal alien, in response to the agent's questioning. The State acknowledges that probable cause to arrest was lacking for the encounter between the agent and the trailer's occupants when this admission was

made. It contends that proper procedure was followed nonetheless because the agent's questioning was based on a reasonable suspicion of criminal activity and was therefore a valid investigatory measure under *Terry* v. *Ohio*, 392 U.S. 1 (1968), and its progeny. According to the State, the reasonable suspicion ripened into probable cause during the *Terry* seizure, leading to a lawful arrest. The validity of the arrest thus turns on whether the initial investigative questioning was justified as a *Terry*-type stop, as the State asserts. We conclude that it was not.[1]

■ In order to make a valid stop to investigate suspected criminal activity, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry* v. *Ohio*, 392 U.S. at 21 (footnote omitted). A police officer may make a brief investigatory stop of a suspect based on less than probable cause to believe that the suspect has committed or is about to commit a crime, as long as the stop is less intrusive than a full-blown arrest, *Dunaway* v. *New York*, 442 U.S. 200, 209-10 (1979), and the investigating officer, based on objective facts and circumstances, reasonably believes that the suspect is, or is about to be, engaged in criminal activity. *United States* v. *Cortez*, 449 U.S. 411, 417-18 (1981); *State* v. *Phillips*, 140 Vt. 210, 215, 436 A.2d 746, 749 (1981).

The standard of reasonable suspicion of criminal activity is required for vehicle stops by Border Patrol agents in all areas other than at the border or its functional equivalent. *United States* v. *Brignoni-Ponce*, 422 U.S. 873, 884 (1975). Border Patrol agents must be able to "reasonably surmise" that the vehicles they stop contain aliens who have crossed the border illegally. *Cortez*, 449 U.S. at 421-22. It logically follows that the *Terry* standard is appropriate for the "stop" of the occupants of the camper in this case. See *Illinois Migrant Council* v. *Pilliod*, 540 F.2d 1062, 1070

---

[1] Defendant also challenges the scope of the searches. We do not address this claim because of our determination that the arrest which prompted the challenged searches was unlawful. Defendant further challenges the officers' failure to obtain a warrant under the state constitution. This claim was not raised before the trial court except by the passing mention of Article Eleven, without discussion, in the pretrial motion. Defendant has made "no showing of extraordinary circumstances that would justify our addressing this issue for the first time on appeal." *State* v. *Maguire*, 146 Vt. 49, 54, 498 A.2d 1028, 1031 (1985). Accordingly, we do not address defendant's state constitutional claim.

(7th Cir. 1976) (immigration agent having reasonable suspicion, based on specific articulable facts, that person is alien unlawfully in this country may conduct street stop of pedestrian to investigate immigration violation), *modified,* 548 F.2d 715 (1977) (on other grounds).

A *Terry* seizure occurs when "the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded . . . ." *INS* v. *Delgado,* 466 U.S. 210, 216 (1984). The occupants of the trailer were undoubtedly "seized" within this definition when they were questioned by the agent. The suspects emerged from the trailer and were confronted by two law enforcement officers with drawn guns. The suspects could not have felt free to decline to answer the agent's questions and walk away, given this forceful display of authority. *United States* v. *Jones,* 759 F.2d 633, 639 (8th Cir.), *cert. denied,* 474 U.S. 837 (1985); *United States* v. *Nargi,* 732 F.2d 1102, 1105 (2d Cir. 1984); *United States* v. *Harley,* 682 F.2d 398, 401 (2d Cir. 1982); see *State* v. *McDermott,* 135 Vt. 47, 50, 373 A.2d 510, 513 (1977) (presence of armed officers under the circumstances of their repeated inquiries constituted a seizure).

Inasmuch as a *Terry* seizure occurred, we turn now to whether it was justified in this case. We must consider the totality of the circumstances in evaluating the validity of an investigatory seizure. The test is "whether, based upon the whole picture, [the agents] . . . could reasonably surmise that the particular vehicle they stopped was engaged in criminal activity." *Cortez,* 449 U.S. at 421-22. Grounds for an investigatory stop are not limited to the officer's own observations. An informant's tip, if it carries enough indicia of reliability, may justify a forcible stop. *Adams* v. *Williams,* 407 U.S. 143, 147 (1972). Here, the constable's statement to the trooper, "that Dave Kettlewell was on my land, that he had brought two people that were Mexican onto my property, that I did not know whether they were legal or not legal," was the "tip" that caused the trooper to notify the Border Patrol and seek its assistance in investigating the citizenship of the people defendant had brought onto the constable's land. The issue is whether this "tip" justified the seizure of the two occupants of the trailer.

In *Adams* v. *Williams,* 407 U.S. at 146-47, the United States Supreme Court held that it was proper for a police officer at 2:15

a.m., in a high crime area, to investigate a tip from an informant known to him, that the man in a nearby car possessed narcotics and had a gun at his waist. The Court found the informant's tip "carried enough indicia of reliability to justify the officer's forcible stop of Williams." *Id.* at 147. Precisely what those indicia were is unclear, though the Court apparently relied on the fact that the informant was known to the officer and on the specificity of the information: the particular person involved, the exact nature of his criminal activity and the precise location of the gun.

The Court noted that not all tips would justify an investigatory stop:

> Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized.

*Id.* In this case, the reliability of the information is not questioned. The constable came to the State Police for assistance in expelling defendant, his companions and vehicles from his land. He identified himself to the police and provided information based on his own observations and conversations with the defendant. Generally, information about criminal or suspicious activity from a citizen, who is not a paid informant and is unconnected with the police, is presumed to be reliable. *United States* v. *Sierra-Hernandez*, 581 F.2d 760, 763 n.1 (9th Cir.), *cert. denied*, 439 U.S. 936 (1978). The question is whether the constable's reliable information provided the trooper with the reasonable suspicion required to justify an investigatory seizure.

The question of the quantum of facts provided to the police necessary to justify an investigatory stop was addressed recently in *State* v. *McKenzie*, 440 A.2d 1072 (Me. 1982). The Supreme Judicial Court of Maine held that the information supplied to the police by an antique dealer, that "three young people traveling in a late model van had just been in her store trying to sell her two antique Russian dolls and that she felt [the police] should 'check them out,' " *id.* at 1074, did not justify an investigative stop. The court found that the information failed to meet the requirements of *Terry* because the dealer did not give any reasons for her sus-

picion of the people in the van, nor did the record suggest she had seen a crime committed or evidence of the commission of a crime. She did not tell the police she thought the dolls were stolen. *Id.* at 1075-76. The court concluded:

> The informant, while undoubtedly reliable, conveyed to the officer only her conclusion that something was suspicious. [The officer] was not justified in resting his suspicions on the unsupported "hunch" of an informant.

*Id.* at 1076. In addition, the court found that the officer's own observations before the stop, that it was an older van, registered in Florida, with three young, scruffy-looking people, did not provide "specific and articulable facts reasonably warranting suspicion of criminal conduct." *Id.*

■ Here, the constable's statement to the trooper regarding the citizenship of the "Mexicans" accompanying defendant was equivocal: "I did not know whether they were legal or not legal." The constable gave no information that would lead the trooper to suspect that the Mexicans were illegal aliens. He did not even say he suspected they were illegally in the country. As in *McKenzie*, 440 A.2d 1072, the trooper had no "specific and articulable facts" as required by *Terry* to warrant the investigatory seizure.

■ The State argues that the agent's observations at the scene provided the reasonable suspicion required for the investigatory seizure, under *Brignoni-Ponce*, 422 U.S. 873. In that case, the United States Supreme Court listed roughly a dozen factors that could be considered in determining whether roving Border Patrol agents had grounds to stop a vehicle. *Id.* at 884-85. Of those factors, only two are arguably present here: the characteristics of the vehicle, which the agent said was of the type often used to smuggle illegal aliens, and the sound of a Mexican dialect from the interior of the trailer.[2]

---

[2] The State lists other factors as grounds for the stop which we do not consider relevant, including the fact that the defendant, one month before the events involved here, had sought the constable's permission to hide illegal Mexican aliens on his property. In the record of the suppression hearing, there is no indication that he told the trooper of defendant's earlier request when he sought assistance from the State Police. We must base our analysis of the sufficiency of the grounds for the seizure on what the constable actually told the trooper, not what he knew but did not convey.

Additionally, we note that the State may not justify the seizure as a lawful investigation of a criminal trespass. A criminal trespass occurs when a person

We have previously concluded that the information from the constable was insufficient to justify an investigatory seizure. We now find that the additional factors observed by the agent did not suffice to justify the seizure that followed.

The State relies heavily on the fact that the agent overheard the trailer's occupants speaking a Mexican dialect as providing a sufficient foundation for a reasonable suspicion that the occupants were illegal aliens. In *Brignoni-Ponce,* the United States Supreme Court held that the single factor of apparent Mexican nationality does not supply sufficient grounds for an investigative stop. *Brignoni-Ponce,* 422 U.S. at 885-86. We believe the Court's unwillingness to rely exclusively on a physical characteristic as demonstrating illegal alienage should include the mere recognition of the Spanish dialect spoken in Mexico, for its speakers could have been legal Spanish-speaking visitors or citizens as easily as they could have been illegal aliens.

Appearance of Mexican nationality may be taken into consideration if there is other evidence of illegal alienage. *Id.; United States* v. *Heredia-Castillo,* 616 F.2d 1147, 1149 (9th Cir. 1980). The record in this case, however, provides meager additional support for the conclusion that the trailer's occupants were illegal aliens. The town constable's information asserted only his belief that the trailer's occupants were "Mexicans." He specifically said he did not know if they were "legal or not legal."

The single remaining factor is the travel trailer itself, well suited for smuggling aliens according to the Border Patrol agent. There was no indication that, in fact, the trailer here had been so used. Among the other factors recognized in *Brignoni-Ponce* and absent here are indications that the vehicle may have recently smuggled aliens across the border: the proximity of the car to the border, previous experience with alien traffic in the area, information about recent illegal border crossings there. *Brignoni-Ponce,*

---

disregards actual or posted notice that he or she may not remain on the property. 13 V.S.A. § 3705(a). At the suppression hearing, the constable did not testify to telling the trooper of posted notices or actual notice to defendant and his companions that they could not remain on his property. Whether, in fact, he had told them to leave is immaterial. We must analyze the grounds for the stop based on what the constable told the trooper. This information provided the basis for the trooper's actions. Since the trooper had no information that a criminal trespass was occurring, the stop may not be justified as an investigation of an ongoing crime.

422 U.S. at 884-85. Here, the agent testified he did not believe the vehicle had violated the United States-Canada border. He assumed that if there had been any violations of immigration law they had occurred at the United States-Mexico border. Nothing except the design of the trailer led him to believe it had been used to smuggle aliens.

It is useful to compare the quantum of information here to that available to the Border Patrol officers in *Cortez*, 449 U.S. 411. There, the Border Patrol officers had a wealth of information indicating that the particular vehicle stopped had just picked up a group of illegal Mexican aliens. The officers had followed tracks of border crossings by large groups in the desert, had determined the modus operandi of the leader, the likely date of the next illegal crossing and roughly when and where the next group would be met by a vehicle. *Id.* at 413-15. The United States Supreme Court concluded that, based on the whole picture, the officers "could reasonably surmise that the particular vehicle they stopped was engaged in criminal activity." *Id.* at 422-23. Here, the "whole picture" includes only a statement by the constable that there were Mexicans on his property and that he "did not know whether they were legal or not legal," the fact that the Border Patrol agent heard a Mexican dialect spoken there, and the design of the trailer itself. What is absent is any facts or inferences indicating that these Mexicans were illegal aliens.

Accordingly, we conclude that the officers could not "reasonably surmise" that the travel trailer contained illegal aliens. In the absence of such a reasonable suspicion, we hold that the encounter in which one of the occupants admitted he was an illegal alien was therefore an unlawful *Terry* seizure. *State* v. *Emilo*, 144 Vt. 477, 481-82, 479 A.2d 169, 171 (1984). Since the State concedes the marijuana was discovered during searches conducted incident to this encounter, the marijuana was obtained by exploitation of the unlawful seizure, *Wong Sun* v. *United States*, 371 U.S. 471, 488 (1963), and the court erred in denying defendant's motion to suppress. See *Emilo*, 144 Vt. at 484, 479 A.2d at 173. The error was not harmless, and defendant's conviction must be vacated.

*Reversed and remanded.*