**STATE of Vermont v. David L. HOLLISTER**

[679 A.2d 883]

No. 95-006

March 22, 1996. Defendant, David Hollister, was charged with possession of marijuana as a result of an encounter with a uniformed police officer in Bennington. Defendant moved to suppress the evidence obtained during the encounter alleging that the encounter was an unlawful seizure. The Bennington District Court agreed, and the State appeals. We reverse and remand.

On June 26, 1994, at approximately 8:30 p.m., a uniformed police officer arrived at the Bennington Free Library to clean up broken glass from the ignition of a cherry bomb in a telephone booth nearby. The library, a known location for young people to use alcohol or drugs and to commit vandalism, was closed. The officer noticed two young males, one of whom was defendant, then nineteen years of age, walking down the library's handicap access ramp. As he testified, he "didn't know what they were doing . . . [but t]hey may have been [doing something illegal]." He walked up the ramp, approached the youths and asked them what they were doing at the library. During the conversation, he noticed the smell of alcohol on defendant's breath, and defendant admitted he had been drinking. The officer asked defendant if he could look in defendant's knapsack. Defendant opened the knapsack, but it contained no alcohol or contraband.

The officer then asked both youths "if they had anything in their pockets that they should not have and I asked if I could see that." Defendant partially pulled out his front pocket, implying it was empty, but the officer noticed there still was a bulge in the pocket. He asked again if anything was in the pocket. Defendant answered that he had something the officer might want and produced two "baggies" of marijuana and a marijuana pipe. The other youth produced a "baggie" of marijuana.

Defendant was arrested for possession of marijuana. His motion to suppress the evidence, granted by the court, is now before us.

The trial court held that defendant was seized, as that term is used in the Fourth Amendment to the United States Constitution, when the officer approached him and asked him questions. Since the officer had no grounds for a seizure at that time, the court held that the seizure violated the Fourth Amendment and required that the evidence be suppressed.

We cannot agree that a seizure occurred at the commencement of questioning. The United States Supreme Court has addressed this question directly and held that "mere police questioning does not constitute a seizure." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). If any seizure was present here, an issue we do not decide, it commenced later in time when the officer sought to search the knapsack and defendant's pockets.

By the time of the seizure, however, the officer had observed alcohol on defendant's breath, and defendant had admitted he had been drinking and was a minor. Possession of alcoholic beverages by a minor is a crime. See 7 V.S.A. § 657(a) (punishable by $500 fine and/or 30 days in jail). Thus, the officer had reasonable and articulable suspicion that defendant had committed, and was continuing to commit, a crime. Such suspicion that a person has committed or is about to commit a crime allows for a limited investigatory seizure under *Terry v. Ohio*, 392 U.S. 1 (1968). See *State v. Kettlewell*, 149 Vt. 331, 334, 544 A.2d 591, 593 (1987). During the *Terry* seizure, the officer may seek con-

sent for a search related to the suspected crime. See *Florida v. Royer*, 460 U.S. 491 (1983).*

The brief encounter here, which occurred in a public place, was well within the limitations of a *Terry* stop, and, therefore, any seizure that occurred was not unreasonable. We cannot agree with the trial court's rationale for suppressing the marijuana and pipe.

Defendant also alleged in his motion to suppress that he did not voluntarily consent to the search of his pockets. The trial court did not reach this issue. We remand for consideration of whether the evidence should be suppressed on this alternative ground.

*Reversed and remanded.*

**Johnson, J.,** dissenting. The majority criticizes the trial court for holding that defendant was seized "when the officer approached him and asked him questions." 165 Vt. at 553, 679 A.2d at 884. Although I agree that the United States Supreme Court has held that "mere police questioning does not constitute a seizure," *Florida v. Bostick*, 501 U.S. 429, 434 (1991), I disagree with the majority's characterization of the trial court's decision. The court stated:

> There is no question in The Court's mind that at least at the point when Officer Doucette asked the defendant and his

companion if they had been drinking and if they had anything they shouldn't have had, that there was a seizure [and that] a reasonable person in the defendant's position at that time would not believe that they were free to leave.

The court thus held that the seizure began not when the officer first questioned defendant and his companion about their presence at the closed library, but when the officer questioned the pair about illegal activity and sought their consent to a search.

I believe that the trial court's conclusion is consistent with the Supreme Court's reasoning in *Bostick*. The *Bostick* Court reaffirmed that the "crucial test" for determining whether a seizure has occurred is "whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Id.* at 437 (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569 (1988)). The question, then, is whether a reasonable person in defendant's position would have felt free to ignore the officer's questions and simply walk away. *Id.* at 434.

The trial court applied this test and reached the correct result. Several aspects of the encounter would have made a reasonable person feel coerced and restrained. The uniformed officer approached the two young men as they walked down a ramp and stood in their path. The officer then immediately started with accusatory and incriminating questions, asking the two men why they were at the closed library, and whether they had been drinking. The officer was persistent, first asking to search defendant's knapsack, and then continuing to question defendant when that search revealed no contraband. See *State v. Quino*, 840 P.2d 358, 363 (Hawaii 1992) (holding

---

* We do not accept the hair-splitting argument of the dissent that the officer could request to search only an area that might contain alcohol and only as long as the officer believed alcohol would be found. The officer testified that the library, when closed, was a known location for youngsters to go and consume alcohol and do illegal drugs, commit acts of vandalism, so on and so forth. We believe the officer could request to search for evidence of any related illegal activity, such as the use of drugs.

that defendant was "seized" where officer initiated encounter, asked intrusive and insinuating questions, and then continued questioning after search of defendant's carry-on bag revealed nothing).

Although an encounter with the police does not become a seizure merely because an officer asks incriminating questions, some police questioning techniques are coercive. I agree with the dissenting judges in *United States v. Little*, 18 F.3d 1499 (10th Cir. 1994), that "[d]irect, focused, or prolonged accusatory questioning in a commanding tone of voice is likely to make a reasonable innocent person feel coerced and unable to terminate a police encounter." *Id.* at 1512 (Logan, J., dissenting). In this case, the officer's prolonged, accusatory questioning is especially disturbing given defendant's youth. Cf. *United States v. Zapata*, 997 F.2d 751, 759 (10th Cir. 1993) ("such attributes as the age, gender, education, and intelligence of the accused" may be relevant in determining voluntariness of encounter).

I am also concerned that the officer never informed defendant that he was free to leave and did not have to answer any questions. See *Bostick*, 501 U.S. at 432 ("particularly worth noting" that police informed Bostick that he had right to refuse consent); *Little*, 18 F.3d at 1510 (Logan, J., dissenting) (agent's failure to inform defendant that she had right to refuse consent should be important factor in determining whether seizure occurred). Again, this fact does not automatically transform the encounter into a seizure. Nonetheless, in light of defendant's age and the other coercive aspects of the encounter, the omission is telling. By informing defendant that he did not have to respond or cooperate, the officer could have mitigated his show of authority (with the greater risk, of course, that defendant would not cooperate).

The majority skips over the threshold question of whether a seizure occurred, instead holding that even if defendant was seized, the seizure was justified. Specifically, the majority states that the officer had a reasonable and articulable suspicion that defendant had been and was continuing to commit the crime of possession of alcoholic beverages by a minor, 7 V.S.A. § 657(a). I agree that, after smelling alcohol on defendant's breath, the officer had a reasonable and articulable suspicion that defendant was in possession of alcohol. Based on that suspicion, the officer asked to search defendant's knapsack. That search revealed no alcohol or other contraband.* Reading the officer's testimony at the hearing on defendant's motion to suppress, however, I can see no connection between the officer's suspicion that defendant was in possession of alcoholic beverages, and the search of defendant's pockets.

The officer testified that after defendant admitted that he had been drinking, the officer asked to look through defendant's knapsack. Defendant agreed, and an inspection of the bag revealed no alcohol or contraband of any kind. Only then did the officer ask defendant and his companion about the contents of their pockets. Defense counsel questioned the officer about the basis for the second request:

> Q: [H]aving failed to discover any alcohol in his bag, you then proceeded to ask him did he have anything in his pocket which he shouldn't have, is that right?
>
> A: Yes.

* Although the issue was not raised here, some commentators have argued that the *Terry* rule permitting investigatory stops based only on reasonable suspicion should be limited to investigations of serious offenses. See 4 W. LaFave, Search and Seizure § 9.2(c), at 28-32 (3d ed. 1996); *Williams v. Adams*, 436 F.2d 30, 38 (2d Cir. 1970) ("I have the gravest hesitancy in extending *Terry* to crimes like the possession of narcotics . . . .") (Friendly, J., dissenting), *aff'd*, 407 U.S. 143 (1972).

Q: Now, at that point when you asked him that, was there any question in your mind that he had committed an illegal act? What was he doing that made an illegal act at the library? Why did you think it was illegal? What was he doing?

A: Based on the fact that we've had numerous vandalism complaints, just the Bennington Free Library is like a haven for the kids to go and hang out and be destructive and so on and so forth and based on the fact that it was I believe a Sunday night and the library was closed and they are coming down the handicapped access ramp which leads directly to the library, there was some concern that I had that they may have been involved in something illegal.

Q: Okay, but you didn't articulate what the illegality was in your affidavit, did you? What specifically were they doing that you thought was illegal?

A: I didn't know what they were doing, that's the reason why I stopped them.

Q: Okay, you didn't know what they were doing, but is it your statement or your testimony today that you suspected they were doing something illegal?

A: They may have been.

The officer's justification for his continued questioning and his search of defendant's pockets was not that he was still looking for alcohol; rather, he could point to only a vague, generalized concern of some possible illegality. In fact, the majority's reasoning ignores the officer's further testimony that after the fruitless search of the knapsack, he no longer suspected that defendant possessed any alcohol:

Q: But other than the fact that they were at a location that you considered a known location for use of controlled substances and drinking, you had no other information by which, upon which to even have some questions in the first place, did you?

A: Other than the fact of conversing with Mr. Hollister and he admitted the fact that he had been consuming alcohol and he was not 21.

Q: But after he said that and you looked into his bag, were you satisfied that he was telling you the truth?

A: That they didn't have any alcohol, yes.

As the officer was already satisfied that defendant did not possess any alcohol, his request to search defendant's pockets could not have been related to his suspicion of criminal activity. In fact, as the officer had determined that his original suspicion was unfounded, without more, the officer was not justified in continuing the limited investigatory seizure of defendant. See *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion) (where seizure permitted on less than probable cause because of legitimate law enforcement interests, scope of detention must be carefully tailored to underlying justification). The illegality of the continued seizure taints defendant's consent to the search of his pockets, if indeed he consented at all. See *id.* at 502-03 (where police action exceeded bounds of permissible *Terry* stop, defendant's consent to search of his luggage was tainted by illegality).

The majority characterizes this argument as "hair-splitting." 165 Vt. at 554 n*,

679 A.2d at 884 n*. Although a colorful response, it does not explain why the majority glosses over the second part of the *Terry* inquiry. After determining that an investigatory stop was based on reasonable suspicion, "the next inquiry is whether its scope and duration are reasonable. The investigation must be as minimally intrusive as possible, bearing in mind the circumstances that gave rise to the suspicion." *United States v. Tehrani*, 49 F.3d 54, 58 (2d Cir. 1995). The officer's continued questioning and search of defendant's pockets after he determined that his suspicion was unfounded fails this test. The majority's statement that "the officer could request to search for evidence of any related illegal activity," 165 Vt. at 554 n*, 679 A.2d at 884 n*, ignores the settled principle that a *limited* investigatory stop must be "carefully tailored," *Royer*, 460 U.S. at 500, and as "minimally intrusive as possible." *Tehrani*, 49 F.3d at 58.

Finally, even if I accepted the majority's conclusion that the officer's seizure of defendant was premised on reasonable suspicion, I can see no reason to remand the case to determine whether or not the search of defendant's pockets was consensual. All of the coercive aspects of this encounter that made it a seizure lead as well to the conclusion that defendant did not consent to the search. Again, the officer did not tell defendant that he could refuse to consent. Moreover, when defendant at first pulled his pocket out only part of the way, the officer "asked him a second time what was in his pocket because there was still a bulge there in the pocket." Only after the officer continued to pressure him did defendant produce the marijuana. Under these circumstances, it is clear that defendant felt he had no choice but to comply.

I would affirm the trial court's decision suppressing the marijuana and pipe.