*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

### ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-427

SEPTEMBER TERM, 2016

| | |
|---|---|
| State of Vermont | } APPEALED FROM: |
| | } |
| | } Superior Court, Franklin Unit, |
| v. | } Criminal Division |
| | } |
| | } |
| Brenda Wright | } DOCKET NOS. 846-7-15 Frcr & |
| | } 70-7-15 Frcs |

Trial Judge: Robert A. Mello

In the above-entitled cause, the Clerk will enter:

Defendant appeals from the trial court's denial of her motion to suppress and dismiss in these consolidated driving-under-the-influence (DUI) and civil suspension proceedings. She argues that the court erred in concluding that the officer had reasonable suspicion to stop her. We affirm.

Following a hearing on defendant's motions, the trial court made the following findings. Late at night in mid-July 2015, a police dispatcher received a 911 call from a clerk who worked at a gas station and convenience store in St. Albans, Vermont. The clerk identified himself or herself by name and reported that a woman had driven to the store, was stumbling around, and appeared to be drunk. The clerk described the woman's vehicle, including its license plate number. The court found that it was unclear as to whether the clerk actually saw the woman driving the vehicle, either when she came to the store or when she left the store.[1] Following the 911 call, the dispatcher put out a "be on the look-out" alert for the vehicle.

In response, a police officer drove to the gas station in question. He arrived within a few minutes of the alert and observed a vehicle pulling out of the parking lot. The vehicle matched the clerk's description, including the license plate number. The officer turned on his emergency lights to stop the vehicle, and it took the operator a minute and eighteen seconds to pull over. The officer testified that this was significant to him because operators usually pull over immediately, as the law requires. The officer stated that he was behind defendant's vehicle for the entire period with his lights and sirens engaged while she was traveling below the speed limit; she did not immediately pull over despite ample space to do so. When defendant did stop, the officer identified her as the operator of the vehicle and based on information obtained during the stop, defendant was charged with DUI.

Based on its findings, the court concluded that the officer had a "reasonable and articulable suspicion of illegal activity" that justified the investigatory stop. State v. Rutter, 2011 VT 13, ¶ 8,

---

[1] The record is silent on whether there was another person in the vehicle.

189 Vt. 574 (mem.). As set forth above, the officer received a tip that defendant was intoxicated and that she had arrived in a vehicle with a particular license plate. Considering the totality of the circumstances, the court concluded that the tip carried "enough indicia of reliability" for the officer to have relied on it. State v. Kettlewell, 149 Vt. 331, 335 (1987). The clerk identified himself or herself, claimed that defendant was intoxicated based on specific observed actions, he or she reported that defendant had come to the store in a particular car and immediately thereafter, the officer corroborated that information by observing that same vehicle pulling out of the gas station's parking lot. Relying on our case law, the court concluded that presenting specific, predictive information about a suspect's itinerary that is not available to the public at large is a powerful indicium of reliability and the fact that the clerk identified himself or herself further bolstered the caller's credibility. Navarette v. California, 134 S. Ct. 1683, 1689 (2014) (concluding that tip was reliable where caller provided specific identifying information about vehicle, made report immediately after incident occurred, police confirmed vehicle's location shortly thereafter, and caller used 911 emergency system, which recorded caller's voice and provided another indicator of veracity); State v. Lamb, 168 Vt. 194, 197 (1998) (concluding that anonymous tip was reliable where informant predicted defendant's movements with specificity, predictions were verified by officer, and caller's general identity was plainly inferable from her report).

The court rejected defendant's assertion that the tip, standing alone, was insufficient to provide the officer with reasonable suspicion that she was DUI because the informant never claimed to see her operate the vehicle and drive away from the store. The court found that this argument implied that it was the informant's knowledge that determined reasonable suspicion when, in reality, it was the officer's knowledge. In this case, the officer saw a vehicle with the license plate identified by the clerk leaving the store immediately after the 911 call. Although the officer may not have been certain that defendant was the driver, "reasonable suspicion need not rule out the possibility of innocent conduct." Navarette, 134 S. Ct. at 1691 (quotation omitted). The officer was not obligated to wait for defendant to engage in erratic driving before stopping her, particularly given the grave risk of harm posed by drunk drivers. See Lamb, 168 Vt. at 200 (stating that courts should consider "the gravity of the risk of harm . . . in evaluating the reasonableness of the investigatory stop"). The court reasoned that requiring the officer to take the time to verify that defendant—whom the officer had reasonable suspicion to believe was intoxicated—was actually the driver in her own vehicle "might well result in the death of an innocent user of our highways." State v. Tucker, 878 P.2d 855, 864 (Kan. 1994). The court thus concluded that the officer's stop was constitutional, and it denied the motion to suppress and dismiss. The court entered judgment for the State in the civil suspension proceedings, and defendant entered a conditional guilty plea to DUI. These appeals followed.

Defendant argues on appeal that the officer lacked reasonable suspicion to stop her because he could not testify that anyone saw a drunk woman get behind the wheel of her car. Defendant maintains that there was no evidence to show that the clerk saw defendant drive to the store or drive off in the identified car. According to defendant, the tip was incomplete because it did not allege an actual crime and it could not form the basis for reasonable suspicion that a crime was being committed.

On review, we will uphold the court's factual findings unless clearly erroneous. State v. Simoneau, 2003 VT 83, ¶ 14, 176 Vt. 15 (quotation omitted). We review the court's legal conclusion as to the legality of the stop de novo. Id. We agree with the trial court that the stop was justified here.

2

As indicated above, a police officer may "make an investigatory stop based on a reasonable and articulable suspicion of criminal activity." Id. The officer needs "more than an unparticularized suspicion or hunch of criminal activity, but needs considerably less than proof of wrongdoing by a preponderance of the evidence." Id. Courts "must consider the totality of the circumstances in evaluating the validity of an investigatory seizure." Kettlewell, 149 Vt. at 335 (explaining that test is "whether, based upon the whole picture, [an officer] . . . could reasonably surmise that the particular vehicle [he] stopped was engaged in criminal activity" (quotation omitted)). "Grounds for an investigatory stop are not limited to the officer's own observations. An informant's tip, if it carries enough indicia of reliability, may justify a forcible stop." Id.

The trial court here found the clerk's tip sufficiently reliable, and we find no basis to disturb this finding. "Generally, information about criminal or suspicious activity from a citizen, who is not a paid informant and is unconnected with the police, is presumed to be reliable." Id. at 336. The trial court accurately summarized the relevant case law in finding the tip reliable, and indeed, defendant does not appear to challenge the reliability of the tip on appeal. See Navarette, 134 S. Ct. at 1689 (explaining that where informant provides specific information related to report, such as model and make of car and license plate number, caller necessarily claims eyewitness knowledge of incident, and "[t]hat basis of knowledge lends significant support to the tip's reliability," as does contemporaneous reporting of observed criminal activity, use of 911 system, and police confirmation of vehicle's predicted location). Instead, defendant contends that the content of the tip did not provide the trooper with reasonable suspicion of a crime to justify an investigatory stop. See id. at 1690 ("Even a reliable tip will justify an investigative stop only if it creates reasonable suspicion that criminal activity may be afoot." (quotation omitted)). We disagree.

In Kettlewell, we recognized that an officer is not justified in resting his suspicions on an informant's conclusory or unsupported "hunch." Id. at 336-37 (discussing case in which caller's description of three young people in late model van selling antique dolls, who she believed should be "check[ed] out," did not provide officer with reasonable articulable suspicion to stop vehicle). In Kettlewell, police officers, acting on a tip, effected a seizure of a camper. We concluded that the tipster's statement to police that there were two Mexican men on his property and that he "did not know whether they were legal or not legal" was equivocal. Id. at 335. It provided no information that would lead the police to suspect that the men were illegal aliens; the reporter did not even say that he suspected that the men were illegally in the country. Id. at 339 ("What is absent is any facts or inferences indicating that these Mexicans were illegal aliens."). We concluded that, based on the information provided, the officers could not "reasonably surmise" that the men were illegal aliens, and thus, the investigative seizure was unlawful. Id. at 339 (internal quotation marks omitted).

We reached a contrary conclusion in State v. Boyea, 171 Vt. 401 (2000). In that case, a police officer received a radio dispatch that described a particular car traveling in a particular location that was operating erratically. The dispatch was based on an anonymous tip. Within five minutes of the dispatch, the officer observed the vehicle described and stopped it. The defendant was subsequently arrested for DUI. We concluded that the officer had reasonable suspicion to stop the defendant's vehicle. We explained that the informant had "reported a vehicle operating erratically; provided a description of the make, model and color of the subject vehicle, as well as the additional specific information that it had New York plates; identified the vehicle's current location; and reported the direction in which it was traveling." Id. at 410. The officer was able to confirm the accuracy of the reported location within minutes, "thus supporting the informant's credibility and the reasonable inference that the caller had personally observed the vehicle. The

information that the vehicle was acting "erratically" equally supported a reasonable inference that the driver might be intoxicated or otherwise impaired." Id. We emphasized the grave risk posed by drunk drivers, and concluded that "[b]alancing the public's interest in safety against the relatively minimal intrusion posed by a brief investigative detention, the scale of justice in this case must favor the stop; a reasonable officer could not have pursued any other prudent course." Id. (citation omitted).

Defendant contends that the tip here was like Kettlewell and other cases where courts have concluded that the tip failed to allege that a crime had been committed. We disagree. The officer here testified that he received word from central dispatch that a store clerk at a particular gas station had called to report "that a female was in the store and that she had driven to the store and appeared to be drunk." The clerk provided the dispatcher with defendant's location and license plate number, supporting the notion that he had witnessed her exiting the car. The information provided to the officer described a crime—defendant had driven to the gas station in a particular car while intoxicated. When the officer saw the vehicle in question within several minutes of the alert, it was reasonable for him to presume that defendant, who had driven to the store while possibly intoxicated, was now driving her car from the store while intoxicated. As the trial court found, the reasonableness of the stop was further enhanced by "the gravity of the risk of harm." Id. ("We have consistently recognized the serious threat posed to public safety by the frequency with which individuals, while under the influence of intoxicating liquor, continue to operate motor vehicles on the public highways." (quotation omitted)). As in Boyea, the public interest in safety outweighed the relatively minimal intrusion here, and the officer acted reasonably in stopping the vehicle. Id.; see also Lamb, 168 Vt. at 199 ("The potential risk of harm to the defendant and the public is widely acknowledged to be a critical factor in assessing the reasonableness of an investigatory stop.").

None of defendant's arguments persuade us otherwise. The State did not need to establish the clerk actually saw defendant drive to the store, just as we have not required it to show that an anonymous tipster actually saw the "erratic" driving that he or she reported to police. The question is what information was relayed to the officer and whether that report should be deemed reliable. See Navarette, 134 S. Ct. at 1688 (recognizing that "anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity . . . because ordinary citizens generally do not provide extensive recitations of the basis of their everyday observations, and an anonymous tipster's veracity is by hypothesis largely unknown, and unknowable"; question is whether tip "can demonstrate sufficient indicia of reliability to provide reasonable suspicion to make an investigatory stop" (quotations omitted)). The tip here was deemed reliable, and the tip— defendant drove to the station and appeared intoxicated—provided sufficient information to support the conclusion that a crime had been committed. See Kettlewell, 149 Vt. at 334 ("A police officer may make a brief investigatory stop of a suspect based on less than probable cause to believe that the suspect has committed or is about to commit a crime, as long as the stop is less intrusive than a full-blown arrest and the investigating officer, based on objective facts and circumstances, reasonably believes that the suspect is, or is about to be, engaged in criminal activity." (citation omitted)).

The record does not support defendant's assertion that the tip alleged merely "drunk walking" or that the trial court found that "any possible connection between the tip and the car that [the officer] pulled over was 'unknown.'" The tip plainly connected defendant to driving the identified vehicle. The car was stopped based on the tip and within minutes of the tip, and we agree with the trial court that, given the gravity of the risk, the officer acted reasonably in stopping the vehicle rather than taking time to verify that defendant, whom the officer had reasonable

4

suspicion to believe was intoxicated, was actually the driver in her own vehicle. See <u>Navarette</u>, 134 S. Ct. at 1691-92 ("Once reasonable suspicion of drunk driving arises, the reasonableness of the officer's decision to stop a suspect does not turn on the availability of less intrusive investigatory techniques. This would be a particularly inappropriate context to depart from that settled rule, because allowing a drunk driver a second chance for dangerous conduct could have disastrous consequences." (quotations and citations omitted)). Based on the totality of the circumstances, the officer was justified in conducting an investigatory stop, and the court did not err in denying defendant's motion to suppress.

<u>Affirmed</u>.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice