# State of Vermont v. Michael I. Weiss and Jeffrey Weiss

[587 A.2d 73]

Nos. 87-214 and 88-106

Present: Allen, C.J., Peck, Dooley and Morse, JJ., and Katz, Supr. J., Specially Assigned

Opinion Filed August 17, 1990

Motion for Reargument Denied January 4, 1991

*Philip H. White,* Orleans County State's Attorney, Newport, and *Thomas M. Kelley,* Drug Prosecutor, Department of State's Attorneys, Montpelier, for Plaintiff-Appellant.

*Rubin, Rona, Kidney & Myer,* Barre, for Defendant-Appellee Michael Weiss.

*Gaston Durrance & Fairbanks,* Montpelier, for Defendant-Appellee Jeffrey Weiss.

**Peck, J.** This interlocutory appeal turns on whether the affidavits in support of a search warrant issued by Judge Pineles for the residence of defendant Michael Weiss set forth facts establishing probable cause and whether Judge Pineles had reasonable cause to authorize a nighttime search of the premises. See *State v. Brown,* 151 Vt. 533, 535, 562 A.2d 1057, 1058 (1989) (critical inquiry for judge issuing warrant is whether, taking information as true, illegal materials would more likely than not be found at residence).

Two defendants, Jeffrey and Michael Weiss, were charged together in September of 1986 for possession and cultivation of marijuana, 18 V.S.A. §§ 4224(f)(1)(B), 4224(g). Some of the evidence against them was obtained during a nighttime search of the Weiss residence. Shortly after they were arraigned, the trial court dismissed the charges against Jeffrey Weiss because the affidavit of probable cause submitted in support of the information against him failed to establish probable cause. In response to defendant Michael Weiss' pretrial motions, Judge Fisher reviewed the search warrant application and granted his motion to suppress the evidence obtained in the execution of the search warrant.

On July 20, 1987, the State filed six affidavits in support of an information recharging Jeffrey Weiss. The affidavits contained information known to the officers at the time of arrest, but not included in the original affidavit. They also provided a list of items seized at Michael Weiss' residence, and the sworn testimony of Lisa Weiss that her son Jeffrey stored belongings at

the residence and that he told her all the marijuana belonged to him.

Ruling on defendant Jeffrey Weiss' pretrial motion to suppress, Judge Wolchik concluded, as had Judge Fisher, that the evidence found at defendant Michael Weiss' residence should be suppressed due to the insufficiency of the affidavits in support of the search warrant application. The resolution of the validity of the search affects the cases against both defendants. Accordingly, we accepted the parties' stipulation that these two cases be consolidated for this appeal.

The State filed this interlocutory appeal claiming that the affidavits support the initial warrant issued by Judge Pineles. The State argues in the alternative that the exclusionary rule should not bar the admission of the seized evidence because the police executed the warrant in "good faith." Since we believe that the affidavits set forth substantial evidence in support of the warrant and that a nighttime search was appropriate, we reverse and therefore do not reach the question of "good faith." A summary of the key facts from the affidavits follows.

On September 22, 1986, Trooper Whitcomb suspected the cultivation of marijuana in the town of Albany, one-half mile southeast of the intersection of Town Highway #1 and Town Highway #3, based on his aerial observation of the area. Later that day, he reported this to Trooper Roberts. Ten days later, on October 2, 1986, both Whitcomb and Roberts returned to the area on foot and found more than thirty cultivated marijuana plants tied to stakes, with a white granular substance that they suspected was fertilizer sprinkled at the base of each plant. They checked the area for persons or fresh tracks of persons who may have been tending the plants, but found none.

One hour later, they returned with two other troopers, Lt. Gilbert and Sgt. White, to uproot the marijuana plants. There they found defendants, Michael Weiss and his son Jeffrey Weiss, and several items that had not been there earlier, including two black plastic garbage bags, a brown plastic garbage can containing manicured marijuana residue, a camouflage nylon bag with shoulder straps, shears, and a loaded shotgun. They arrested defendants on charges of possession, manufacturing, and cultivation of marijuana, and gave them *Miranda* warnings. Defendant Michael Weiss made three incriminating state-

ments after invoking his right to counsel: (1) that he owned 390 acres of land in the town of Albany; (2) that he lived on the land that he owned; and (3) that his son did not need a hunting license on the land where the marijuana plot was located. The first two statements were made in response to police questioning. All three statements were included in the affidavits submitted in support of the search warrant application.

Defendants were placed in custody, and the troopers applied for a search warrant for the residence of defendant Michael Weiss located in the town of Albany. After 10:00 p.m. that same evening, Judge Pineles ordered the search to be conducted "at any time" within the next three days. At midnight on October 2, 1986, when no one was home, the police entered the house through a second-story window. They searched the house and found several incriminating items. Lisa Weiss—wife of defendant Michael Weiss and mother of defendant Jeffrey Weiss—returned home at approximately 1:00 a.m. and answered police questions.

After the pretrial suppression hearing, the court suppressed the first two statements made by defendant Michael Weiss. After excising the two statements from the affidavits, it found no probable cause for the search. The court reasoned that once the incriminating statements were excised, one had to infer that Michael Weiss possessed cultivation materials, and further infer that he kept the cultivation materials at his house. "[I]nferences based on inferences," in the court's view, did not support a ruling based on "substantial evidence" that the specified items were presently at the residence. In particular, the court stated:

> There is no information provided in any of the material supporting the application that would in any way tie the defendant's residence with the cultivation operation[,] . . . no statement of the distance between the plot in which the defendant was found, and his home[,] . . . no information about the proximity of other structures or residences to the plot[,] . . . no assertion that a path of any kind leads between the plot and the residence[, and] . . . no allegation that anyone has ever observed, or even heard rumors that any storing of the materials, processing, culti-

vating or transacting of business involving the marijuana has ever been carried out at the residence.

As a result, the seized evidence was suppressed.

## I.

■■■ Taking the information in the affidavits as true and excising the two incriminating statements, the propriety of the search warrant issuance turns on whether there was substantial evidence supporting the warrant. *State v. Potter*, 148 Vt. 53, 60, 529 A.2d 163, 167 (1987). Mindful of the fact that reviewing courts should give great deference to probable cause determinations, *State v. Ballou*, 148 Vt. 427, 434, 535 A.2d 1280, 1284 (1987), we hold that substantial evidence supported the search warrant. "Affidavits must be viewed in a common sense manner and not be subjected to hypertechnical scrutiny." *Id.*

The trial court specifically mentioned that the affidavits failed to link the residence with the marijuana plot by a path, or even indicate their proximity to each other. The court ruled that the information in the affidavits was sufficiently current so as to establish the location of defendant Michael Weiss' residence. It listed the following facts in support of its ruling:

a) [The investigating officer's fellow trooper] Officer Webster's previous dealings with the defendant within the year at defendant's residence;

b) confirmation by a U.S. Border Patrol agent familiar with the area of the defendant's place of residence within 30 to 60 days of the warrant request;

c) characterization of the defendant's residency as "longtime" in the place described.

The court concluded, however, that probable cause to search the residence was absent because the affidavits did not "tie the defendant's residence with the cultivation operation." We disagree with this conclusion.

The court explained that one must infer that the materials used in the process of cultivation and manufacture of marijuana "exist at all." The police found such materials—e.g., black plastic garbage bags, shears, twine, matchbooks, a shotgun, shotgun shells and knapsack—at the planting site close to the defendants. The police found defendant Michael Weiss within

an arm's length of a plastic garbage can containing marijuana residue that had not been at the planting site one hour earlier. No inference need be made that the materials existed. The court had to infer only that more supplies were stored at the residence.

The necessary nexus between the house and the planting site existed. The application for the search warrant listed defendant Michael Weiss' address as in the town of Albany. The affidavits submitted in support of the warrant application stated that the planting site was also located in the town of Albany. The connection between the materials to be seized and the premises where the police "propose to search can be inferred from the nature of the crime, the type of materials sought, the extent of an opportunity for concealment, and reasonable inferences as to criminal behavior." *State v. Moran*, 141 Vt. 10, 17, 444 A.2d 879, 882 (1982). Items such as the ones found at the planting site are commonly stored at a household. Unlike *State v. Harp*, 299 Or. 1, 697 P.2d 548 (1985)(en banc), where the sole connection between the defendant and the marijuana was the proximity of the planting site three-eighths of a mile from the defendant's residence, here there was evidence of "human activity in the area." *Id.* at 3, 697 P.2d at 549. The presence of defendants at the marijuana patch with common household items created a link between the residence and the site sufficient for the court to lawfully authorize the search warrant.

We will not engage in hairsplitting or hypertechnical analysis where it is objectively reasonable to infer that defendants stored additional materials at their home. *Ballou*, 148 Vt. at 433–34, 535 A.2d at 1284. We hold that substantial evidence supported the issuance of the search warrant even after the excision of the incriminating statements. See V.R.Cr.P. 41(c); *Potter*, 148 Vt. at 60, 529 A.2d at 167 (where existence of probable cause is challenged, "this Court must determine whether there is substantial evidence in the record supporting the magistrate's decision").

## II.

Defendants argue that even if the affidavits established probable cause for the issuance of a warrant for the

search of defendant Michael Weiss' house, they did not establish reasonable cause for authorization of a nighttime search of the premises. Vermont Rule of Criminal Procedure 41(c) states: "The warrant shall be served between the hours of 6:00 A.M. and 10:00 P.M. unless the warrant directs that it may be served at any time. The judicial officer may, by appropriate provision in the warrant, and for reasonable cause shown, authorize its execution at other times." A nighttime search is justified "where there is information presented in the search warrant affidavit that, absent a nighttime search, there is a danger that the evidence sought will be disposed of." *Commonwealth v. Johnson*, 315 Pa. Super. 579, 584–85, 462 A.2d 743, 746 (1983).*

The warrant in the instant case allowed execution "at any time," and although the trial court made no finding as to the time when the search occurred, there is substantial evidence that it occurred after midnight. At that time the defendants had been arrested. "The very real possibility existed that appellant[s'] fate had become known or would become known before the night was over, and that this would prompt removal of the [incriminating evidence] by others." *Commonwealth v. Crawford*, 320 Pa. Super. 95, 101, 466 A.2d 1079, 1082 (1983); *Commonwealth v. Baldwin*, 253 Pa. Super. 1, 6–8, 384 A.2d 945, 948–49 (1978). The judicial officer knew from the affidavits that Michael Weiss had a wife. He could have reasonably concluded that the spouse might upon learning of her husband's apprehension seek to destroy any incriminating evidence and that an immediate search was warranted. Since the officers applied for the warrant after 10:00 p.m., in order to authorize an immediate search the judge was obliged to authorize a nighttime search.

---

* The Reporter's Notes to V.R.Cr.P. 41(c) state that "[t]he warrant is to be executed in the daytime unless it expressly provides otherwise *on the specific finding* by the judicial officer of cause for a nighttime search." (emphasis added). The record does not reflect a specific finding by the issuing judge of reasonable cause for a nighttime search. However, we believe that the Reporter's Notes are incorrect insofar as they indicate a necessity for a specific finding. The notes state that Rule 41(c) is based on F.R.Cr.P. 41(c). Under federal law, the only requirement for a valid warrant authorizing a nighttime search beyond probable cause for issuance is "that there be cause for carrying on the unusual nighttime . . . search that, upon showing made, convinces the magistrate that it is reasonable." *United States v. Curry*, 530 F.2d 636, 637 (5th Cir. 1976). We are persuaded that the federal standard is correct.

The information contained in the affidavits established probable cause for the issuance of a warrant for the search of defendant Michael Weiss' house, and reasonable cause existed to permit a nighttime execution of the search. The information obtained from this search in turn provided probable cause to arrest defendant Jeffrey Weiss.

*Reversed and remanded.*

## On Motion to Reargue

**Peck, J.** Subsequent to the filing of the opinion in this case, defendants moved for leave to reargue. V.R.A.P. 40. By reason of matters brought to our attention by defendants' motion, we have recalled the opinion and redrafted portions thereof relating to the contention that reasonable cause for a nighttime search was lacking. The revisions do not change the result, and the entry order is not affected.

*Motion to reargue denied.* See *Brouha v. Postman,* 145 Vt. 449, 453, 491 A.2d 1038, 1040 (1985).