### State of Vermont v. Wayne D. Crandall and Donna L. Crandall

[644 A.2d 320]

No. 90-131

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed May 20, 1994

*Theresa St. Helaire*, Bennington County Deputy State's Attorney, Bennington, for Plaintiff-Appellant.

*E.M. Allen*, Defender General, and *Anna E. Saxman*, Appellate Defender, Montpelier, for Defendant-Appellee Wayne Crandall.

*Robert Katims* of *Martin & Paolini, P.C.*, Barre, for Defendant-Appellee Donna Crandall.

**Gibson, J.** The State appeals from the trial court's suppression of all evidence obtained from the stop and search of a vehicle occupied by defendants Wayne and Donna Crandall. We remand for further fact-finding by the trial court.

### · I.

On Wednesday, March 15, 1989, Officer Gary Briggs met with an informant who volunteered information about persons he believed were dealing drugs in the Bennington area. The informant named Wayne and Donna Crandall, told Briggs where they lived, identified some of their customers, and made a number of predictions about how and when the Crandalls would next purchase drugs. The informant said the Crandalls usually collected from their customers on Friday nights and Saturday mornings. He further indicated that they would borrow Jack Crandall's black pickup truck the next weekend, that they would head north on Route 7 to meet their supplier, and that Donna Crandall would be driving.

Briggs verified that Jack Crandall owned a black pickup truck matching the informant's description and then attempted surveillance of the Crandalls on Saturday, March 18. That morning, Briggs watched Donna Crandall drive away in the truck with Wayne Crandall as a passenger, but lost them as they proceeded out of Bennington. He went back to the Crandall residence, and saw them return about noontime.

Early the following week, Briggs again met the informant, who told him the Crandalls had changed their route and had left Bennington on Route 9 to go to the Mount Snow area, where they obtained about two pounds of marijuana. He predicted they would do the same thing on Saturday, March 25.

Relying on this information, Bennington police officers and the Vermont State Police then organized a team surveillance effort. Early on Saturday morning, a person identified by the informant as a Crandall customer arrived at their residence. Shortly thereafter, defendants left, went to get the pickup truck, and with Donna driving,

proceeded out of Bennington on Route 9 to Wilmington, where they turned onto Route 100 toward Mount Snow. Defendants took numerous side roads, were lost by the police at various times, but were eventually spotted and followed to a residence in a remote location. The trial court found this destination to be in the general area predicted by the informant.

In mid morning, the supervisor of the field surveillance team telephoned Officer Baker in Bennington, and instructed him to stop the pickup truck when it reentered Bennington. At about noon, Baker spotted the Crandall vehicle. He followed it into Bennington, stopped it, and asked the driver, Donna, for registration, insurance identification, and a driver's license. Officer Haverkoch soon joined him and took up a position from which he could watch Wayne. After requesting Donna to get out of the vehicle, Baker asked her, and then Wayne separately, where they had gone and for what purpose. There were minor conflicts in their stories. Baker also sought, without success, to obtain Donna's consent to search the vehicle. Meanwhile, Haverkoch observed Wayne reach behind the seat, grab a brown grocery bag, and place it on the floor in the front of the truck. When Haverkoch asked Wayne what was in the bag, Wayne replied, "[N]othing." Thereafter, Baker approached the passenger side door and asked Wayne to get out so he could search the vehicle. When Wayne tried to take the bag with him, Baker told him to leave it in the truck. Wayne threw the bag at Haverkoch, hitting him in the chest. The bag, which contained approximately two pounds of marijuana, opened and some of the contents spilled onto Haverkoch's shirt. Defendants were arrested, read their *Miranda* rights, and brought to the Bennington Police Station.

The State has charged both defendants with possession of marijuana. Defendants filed a motion to suppress the marijuana, which the trial court granted on grounds that the police did not have probable cause to believe defendants were committing a crime at the time the police stopped their vehicle.* The State requested permission to appeal, pursuant to 13 V.S.A. § 7403(c)(1) and V.R.A.P. 5(b)(1)(A). The court granted the motion, certifying the following question:

---

* The trial court applied a single standard—whether there was probable cause to believe defendants had committed a crime—to the entire stop. Defendants contend that in doing so the trial court implicitly held that the incident was from its inception a full-fledged arrest. The stop in question was initially, however, no more than an investigatory stop, and the case must therefore be analyzed as an escalating investigatory stop.

Did the trial court err in determining that the State did not establish sufficient probable cause to believe a crime was being committed thus justifying the officer in stopping the defendants in their vehicle?

■ As drafted, the certified question confuses the degree of justification required for an investigatory stop with that required for an arrest, under the assumption that the police needed probable cause to arrest when they made the stop. We are not, however, limited by this inaccuracy inasmuch as a certified question is a landmark, not a boundary, *State v. Dreibelbis*, 147 Vt. 98, 100, 511 A.2d 307, 308 (1986), and we can address issues that are fairly raised even if they are not exactly described. *State v. Curtis*, 157 Vt. 275, 277, 597 A.2d 770, 771 (1991); *In re Maple Tree Place*, 156 Vt. 494, 498, 594 A.2d 404, 406 (1991). When a question certified to this Court is overbroad or otherwise inapt, we have not hesitated to rephrase it in order to set forth more appropriately the issues raised on appeal. See *Shields v. Gerhart*, 155 Vt. 141, 149 & n.8, 582 A.2d 153, 158 & n.8 (1990); *In re W.H.*, 144 Vt. 595, 600, 481 A.2d 22, 26 (1984). Accordingly, we modify the certified question as follows: Did the trial court err in determining that the State did not establish sufficient justification for stopping and then searching defendants' vehicle?

## II.

The underlying issue is whether there was adequate justification for each of the increasingly greater intrusions by the police. See *United States v. Chaidez*, 919 F.2d 1193, 1197 (7th Cir. 1990) (continuum of stricter requirements must be established to justify increasingly greater intrusions); *State v. Gray*, 150 Vt. 184, 189, 552 A.2d 1190, 1193 (1988) (to same effect). The stages contested by the parties are the initial stop, and the ordering of Wayne Crandall to vacate the vehicle, which defendants claim constituted a search. The State contends that (1) the police had probable cause to believe a crime was being committed when the officer stopped the car, or (2) the initial stop was supported by articulable reasonable suspicion and the stop escalated into probable cause for the search. Alternatively, the State contends there was no search, because the bag containing the marijuana was abandoned. Defendants argue that (1) the trial court correctly held there was no probable cause for the stop and search, and in any event, the State failed to establish either the informant's veracity or the basis of his knowledge, as required by V.R.Cr.P. 41(c); (2) the ordering of Wayne Crandall out of the vehicle violated Chapter

I, Article 11 of the Vermont Constitution; and (3) absent exigent circumstances, the warrantless search of their motor vehicle violated Chapter I, Article 11 of the Vermont Constitution.

### A.

█ Initially, we address whether the stop was justified. The trial court applied a probable-cause-for-arrest standard in analyzing this question. But it is clear that "[p]olice officers may conduct a warrantless investigatory stop when specific and articulable facts, taken together with rational inferences from those facts, warrant a reasonable belief that a suspect is engaging in criminal activity." *State v. Caron*, 155 Vt. 492, 499, 586 A.2d 1127, 1131 (1990) (citing *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968)). In evaluating reasonable and articulable suspicion, "'[t]he totality of the circumstances—the whole picture—must be taken into account.'" *State v. Paquette*, 151 Vt. 631, 635, 563 A.2d 632, 635 (1989) (quoting *State v. Lambert*, 146 Vt. 142, 143–44, 499 A.2d 761, 763 (1985)). In the instant case, the justification for the initial stop depends on whether the informant's tip was sufficiently corroborated to furnish reasonable suspicion that defendants were engaged in criminal activity.

The question is governed by *Alabama v. White*, 496 U.S. 325 (1990). In *White*, an anonymous telephone caller tipped police that the defendant would leave a certain apartment building at a particular time with a brown attache case containing an ounce of cocaine, get into a Plymouth station wagon, and go to a specified motel approximately four miles away. Although not all of the details mentioned by the tipster were verified, such as the defendant's name or the precise apartment from which she left, the police did corroborate the predicted time frame, point of departure, vehicle, and destination. The Court concluded that although the officers stopped the defendant just short of the specified motel, the four-mile route driven by the defendant "significantly corroborated" the destination. *Id.* at 331. The Court reasoned that the tip contained a range of details relating to a third-party's future actions that are not normally easy to predict and held that, although it was a close case, the stop was justified. *Id.* at 332.

█ Similarly, in the instant case the anonymous tip, as corroborated, furnished reasonable suspicion of criminal activity. The anonymous informant predicted, and the police corroborated, the time frame, point of departure, vehicle, route, use of side roads, and destination. In addition, the informant identified one of the Crandalls'

customers who appeared later at their premises. The anonymous tip herein is, if anything, more detailed and more fully corroborated than the tip in *White*. The initial stop was, therefore, justified.

### B.

The State contends that, irrespective of the trial court's ruling that the stop was not supported by sufficient probable cause to believe that a crime was being committed, the circumstances following the stop escalated into probable cause that justified the ensuing search. Because the court found the stop to be unjustified, it made no separate findings as to whether sufficient justification for a search of the vehicle developed after the stop. Inasmuch as this issue was never addressed by the trial court, the matter must be remanded for further fact-finding.

*The certified question, as rephrased, is answered as follows: The State established sufficient justification for stopping defendants' vehicle; however, because the trial court made no findings as to whether the search was justified, the matter must be remanded for findings on this issue. Remanded for further proceedings.*