**STATE of Vermont v. Gregory WELCH**

[650 A.2d 516]

No. 93-422

October 14, 1994.

At the suppression hearing, Trooper Vincent DiMauro testified that he and two other officers were on an unrelated, late-night investigation in Westminster, when an unnamed and unknown person approached and advised them of some suspicious activity elsewhere in the area. DiMauro said that the unidentified person had

observed an older model Chevrolet pickup truck in a driveway. The occupants were out of the vehicle walking around. He thought that that was suspicious, so he went down a ways, turned around and reversed his direction and he indicated that the vehicle was in a different driveway and the occupants were either not around or in the vehicle.

According to DiMauro, this person also saw objects in the back of the truck, though he did not state what the objects were or that he had seen anyone place the objects there. As the unidentified person was talking to the troopers, he identified the pickup truck driving by them as the same one he had observed earlier. Trooper DiMauro followed the truck for two miles onto the interstate and then stopped it, without observing any unlawful or suspicious conduct by the driver. When the trooper pulled the vehicle over, the operator stopped properly. DiMauro testified that his purpose in stopping the vehicle was to inquire about what defendant was doing going in and out of driveways.

The trial court denied the motion to suppress and explained its ruling as follows:

There are a number of facts that, combined, create an articulable and reasonable suspicion of wrongdoing. The officers testified that around midnight . . . an unidentified informant reported that he had seen an old pickup truck in a driveway with its occupants out walking around, and a few minutes later saw the same pickup in a different driveway with objects in its bed. The area in which the truck was seen, was an area that experiences burglaries. As the officers were talking to the informant, a pickup truck, matching the description given them by the informant, passed them, and the informant identified the truck as the one he had seen involved in the suspicious activity. The officers' subsequent stop of the defendant was made in order to investigate what they believed to be suspicious activity. The Court finds that the officers' suspicions of wrongdoing were based on articulable and reasonable facts and that the inferences drawn from those facts were rational.

This appeal followed.

There is no dispute that defendant was driving while under the influence and that, prior to being stopped, he had not driven in a manner to create reasonable, articulable suspicion that he was driving

while under the influence. The sole issue on appeal is whether the police had reasonable suspicion to stop defendant's vehicle, apart from his driving.

A reasonable and articulable suspicion of wrongdoing is necessary for a police officer to stop a motor vehicle that is being operated on the highway. *State v. Emilo*, 144 Vt. 477, 481, 479 A.2d 169, 171 (1984); see *Delaware v. Prouse*, 440 U.S. 648, 663 (1979). "The level of suspicion required under the Fourth Amendment is considerably less than proof of wrongdoing by a preponderance of the evidence, *United States v. Sokolow*, 490 U.S. 1, 7 (1989), but it must be more than an 'inchoate and unparticularized suspicion or "hunch."'" *State v. Sutphin*, 159 Vt. 9, 11, 614 A.2d 792, 793 (1992) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). As we stated in *State v. Kettlewell*, 149 Vt. 331, 335, 544 A.2d 591, 594 (1987), "The test is 'whether, based upon the whole picture, [the agents] . . . could reasonably surmise that the particular vehicle they stopped was engaged in criminal activity.'" (alterations in original) (quoting *United States v. Cortez*, 449 U.S. 411, 421–22 (1981)).

Taking the testimony of the officer in the instant case as true, see *State v. Weiss*, 155 Vt. 558, 562, 587 A.2d 73, 75 (1990), there is no support for the court's conclusion. The officer testified that he stopped defendant to inquire about what he was doing going in and out of driveways. The unidentified informant had told the officer that he thought that it was suspicious to see the truck's occupants out of the vehicle walking around and to see the vehicle in a different driveway when the informant turned around for a second look.

Though the court found that the area in which the truck was seen was an area that experiences burglaries, there was no evidence in the record to support this finding. Nor had there been any recent reports of criminal activity in the area.

Moreover, nothing in the conduct of the driver as he was followed by the police suggested criminal activity. The informant's statement to the police was based on speculation, not accompanied by sufficient indication of criminal activity to justify stopping defendant. Cf. *State v. Siergiey*, 155 Vt. 78, 81, 582 A.2d 119, 121 (1990) (citizen report of erratic driving, plus officer's own observation of defendant driving extremely slowly, added up to reasonable articulable suspicion); *State v. Schmitt*, 150 Vt. 503, 507, 554 A.2d 666, 668–69 (1988) (after anonymous tip, police cruiser followed defendant's car and observed erratic and dangerous driving, justifying stop).

While information about criminal or suspicious activity from a citizen who is not a paid informant and is unconnected with the police may be presumed to be reliable, *United States v. Sierra-Hernandez*, 581 F.2d 760, 763 n.1 (9th Cir.), *cert. denied*, 439 U.S. 936 (1978), an investigatory stop may not be based solely on "'the unsupported "hunch" of an informant.'" *Kettlewell*, 149 Vt. at 337, 544 A.2d at 595 (quoting *State v. McKenzie*, 440 A.2d 1072, 1076 (Me. 1982)). The informant's conclusion in this case that the events involving defendant were suspicious, uncorroborated by facts that would make it seem so to the objective observer, is insufficient. By the officer's account of what he learned from the informant, the activity reported was peaceful and open. There was no sign that any structure had been broken into and no details of what goods or objects were in the truck.

In sum, defendant's activities did not give rise to a reasonable, articulable suspicion of wrongdoing, and the court should have suppressed the evidence resulting from the stop.

*Reversed and remanded.*

**Morse, J.,** dissenting. I would agree that mere presence on a rural Vermont

road after midnight does not deserve even a brief stop by police. *State v. Emilo*, 144 Vt. 477, 481, 479 A.2d 169, 171 (1984). It is not unusual for a neighbor to go for a walk or a traveler to pass through. For any Vermont person living "in the sticks," however, those late hours have particular significance. When people are seen moving from driveway to driveway, suspicion is a typical and appropriate response.

Although the facts developed at the hearing were sparse, enough facts appear to support the legality of the stop. In this case, State Trooper Vincent DiMauro was informed that an old pickup truck was seen moving from driveway to driveway after midnight in a rural area. The informant told the police that when he saw the pickup in one driveway, more than one person was milling about. When he soon saw the truck in a second driveway, no one was visible, but the informant could see objects in the bed of the truck. The informant thought the activity was suspicious given the late hour. As the Court points out, information given by a citizen is presumed to be reliable, *United States v. Sierra-Hernandez*, 581 F.2d 760, 763 n.1 (9th Cir.), *cert. denied*, 439 U.S. 936 (1978), and the police officer must determine whether the informant's tip constitutes suspicious activity. *State v. McKenzie*, 440 A.2d 1072, 1076 (Me. 1982). Trooper DiMauro testified that he agreed that the activity was suspicious, and that the late hour and very rural location made the activity indicative of burglary. Consequently, when the informant pointed out the pickup, Trooper DiMauro stopped the truck to ask the driver what he was doing. Was DiMauro unreasonable for doing that?

All that is required for a legal stop is that the officer act on more than a hunch or intuition. *State v. Sutphin*, 159 Vt. 9, 11, 614 A.2d 792, 793 (1992). If specific facts, and rational inferences drawn from those facts, can be articulated that would lead an officer to the reasonable belief that a defendant is engaged in some wrongdoing, then an officer may stop the potential suspect to either confirm or dispel the suspicions. *State v. Lambert*, 146 Vt. 142, 143, 499 A.2d 761, 762 (1985).

This is a far stronger case than *State v. Kettlewell*, 149 Vt. 331, 335–36, 544 A.2d 591, 594–95 (1987), in which we held that an informant's statement that he did not know whether two Mexicans on his property were legal aliens was a hunch based on mere speculation. The informant here did not speculate that it was after midnight, nor did he speculate that the pickup was in more than one driveway and had articles in the bed. Further, *Emilo*, 144 Vt. 477, 479 A.2d 169, supports my view. There we held that the police acted on a mere hunch when stopping a vehicle on a rural highway at 3 a.m. merely because it had a Massachusetts plate and was an unfamiliar car. *Id.* at 481, 479 A.2d at 171. The *Emilo* Court would have surely been intrigued by the added facts of this case. A car traveling on a rural highway late at night is not nearly as indicative of criminal activity as is a truck moving from driveway to driveway under the cover of darkness, especially where it appears that objects have been loaded in the bed of the truck at one of the residences. In short, an objective observer could surmise, as did Trooper DiMauro, that the driver acquired the load by larcenous activity. See *United States v. Sokolow*, 490 U.S. 1, 10 (1989) (whether police have enough evidence to make a stop based on observance of innocent behavior determined by the degree of suspicion attaching to particular types of noncriminal acts); *United States v. Cortez*, 449 U.S. 411, 418–19 (1981) (reasonable suspicion based on common sense of trained officers).

A peace officer need not witness criminal activity or erratic driving after receiving a tip and before making a stop. In *Lambert*, we upheld a vehicle stop based solely on third-hand hearsay information,

with no police observation of criminal behavior. *Lambert,* 146 Vt. at 143, 499 A.2d at 762; see *State v. Schmitt,* 150 Vt. 503, 507, 554 A.2d 666, 668–69 (1988). Further, the Court's comparison of *Schmitt* and *State v. Siergiey,* 155 Vt. 78, 81, 582 A.2d 119, 121 (1990), is inappropriate. Neither of those cases determined the reliability or sufficiency of the anonymous tip. *Siergiey,* 155 Vt. at 80, 582 A.2d at 120; *Schmitt,* 150 Vt. at 507, 554 A.2d at 668. Each case was decided solely on the basis of the officer's observations. Using those cases to support the proposition that an officer must both receive a tip and witness criminal behavior would be mistaken. A more apt case is one this Court cited with approval in *Siergiey,* 155 Vt. at 81, 582 A.2d at 121. In *State v. Czmowski,* 393 N.W.2d 72, 72–74 (S.D. 1986), a vehicle stop was upheld based on an anonymous call that a car was being driven erratically and the car's mere presence in the area, without police observation of erratic driving or criminal behavior. I see little difference between that case and this.

Finally, the intrusion on defendant's privacy was minimal. Trooper DiMauro sought only to inquire why the defendant was loading his truck, apparently at different secluded homes, in the middle of the night. We have previously recognized that "[a] brief detention, its scope reasonably related to the justification for the stop and inquiry, is permitted in order to 'investigate the circumstances that provoke suspicion.'" *Lambert,* 146 Vt. at 143, 499 A.2d at 762; see also *Adams v. Williams,* 407 U.S. 143, 146 (1972) ("A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time."). The Court's use of Trooper DiMauro's innocuous inquiry to somehow show that reasonable and articulable suspicion was lacking runs

contrary to the principles of *Terry v. Ohio,* 392 U.S. 1 (1968). Police officers must be able to respond to citizen complaints, and simple inquiries are the most appropriate, least intrusive response. Country dwellers would find much solace, and be better protected, if police were permitted to ask questions in cases such as this one.

I say there was enough evidence to deny the motion to suppress, and I would affirm.