## State of Vermont v. Timothy J. Hall

[719 A.2d 435]

No. 97-160

Present **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed September 11, 1998

*Dale O. Gray,* Caledonia County State's Attorney, and *Alan M. Singer,* Deputy State's Attorney, St. Johnsbury, for Plaintiff-Appellee.

*David J. Williams* of *Sleigh & Williams,* St. Johnsbury, for Defendant-Appellant.

**Skoglund, J.** Defendant Timothy Hall appeals the Caledonia District Court's denial of his motion to suppress evidence of drug paraphernalia seized in his house pursuant to a search warrant. Defendant argues the warrant was improperly granted because: (1) to obtain the information underlying the warrant, a police officer impermissibly walked on defendant's property to confirm an informant's tip; (2) the officer did not find any marijuana plants to corroborate the tip, but failed to include this exculpatory information in his affidavit in support of the warrant application; and (3) the affidavit failed to establish a nexus between the marijuana growing on defendant's lawn and his residence. We affirm.

On September 16, 1996, a confidential informant contacted the Hardwick Police Department to report that defendant was cultivating marijuana in his yard. That evening, when a Hardwick police officer contacted the informant, he told the officer that defendant had a healthy marijuana plant growing in his yard and forty to fifty marijuana plants growing along the edge of the yard. He also stated he had seen a bong in defendant's house.

On September 17, 1996, two officers and a state game warden searched for the large clump of forty to fifty marijuana plants in the woods behind defendant's residence. To search this area they used a network of well-marked and well-used trails. They observed no signs prohibiting entry. Two of the trails terminated at defendant's property. After searching unsuccessfully for the plants, the officer concluded that they were looking in the wrong place.

On the following day, the officer returned to the property with the informant, who immediately led the officer to a vantage point five to ten feet from defendant's lawn in the woods behind defendant's house. No fences obstructed the officer's view or limited access to defendant's yard, nor were any "no trespassing" signs posted. From this vantage point, the officer observed a marijuana plant growing on defendant's lawn. The plant appeared to be well-tended and had been tied down with fishing line. Before they could locate any other plants, the officer and the informant left the area to avoid being seen by someone driving up defendant's driveway. While driving back to the

police station along the public highway, which passes approximately twenty to twenty-five yards from defendant's yard, the officer saw the marijuana plant from the road.

Later that day, the officer prepared a search warrant affidavit. In his affidavit, the officer did not mention the first search in which he failed to locate any marijuana plants. On September 18, 1996, a warrant was issued. On September 20, 1996, officers searched defendant's residence and found three marijuana plants in his yard as well as marijuana and drug paraphernalia in his home. Defendant was charged with unlawful possession of marijuana in violation of 18 V.S.A. § 4230(a)(2). He moved to suppress the evidence seized under authority of the search warrant. The trial court denied the motion, finding that the officer and informant did not enter the curtilage of defendant's property. Defendant appeals this ruling.

## I.

Defendant contends that the officer violated both the Fourth Amendment of the United States Constitution and Article 11 of Chapter I of the Vermont Constitution by initially entering the property without a warrant. The Fourth Amendment has been interpreted to permit warrantless entry onto "open fields," or areas outside of the curtilage where there is no reasonable expectation of privacy. See *Oliver v. United States*, 466 U.S. 170, 177 (1984). Article 11 of the Vermont Constitution, however, provides greater protection than does the Fourth Amendment of the United States Constitution. See *State v. Kirchoff*, 156 Vt. 1, 4, 587 A.2d 988, 991 (1991). Article 11 recognizes an expectation of privacy in open fields as long as that privacy is sought. See *id.* at 10, 587 A.2d at 994; *State v. Rogers*, 161 Vt. 236, 246, 638 A.2d 569, 575 (1993) (noting that landowner must take steps to establish expectation of privacy in open fields). Fencing or signs must be posted so that a reasonable person would conclude the land is intended to remain private. See *Kirchoff*, 156 Vt. at 10, 587 A.2d at 994. Since no signs were posted, nor were other methods used, to indicate that defendant sought to exclude the public from the woods adjacent to his yard, we conclude that defendant had no expectation of privacy from a walk-on search in the wooded area behind his house.

Defendant maintains, however, that the officer was within the curtilage while viewing the marijuana plant. The curtilage, or area immediately adjacent to a house, is afforded the same protection from unreasonable search and seizure as the house. See *United States v.*

*Dunn*, 480 U.S. 294, 301 (1987). To determine whether an area falls within the curtilage, courts must analyze whether the area in question is so "intimately tied to the home itself that it should be placed under the home's 'umbrella.'" *Id.* Courts use four factors in making this determination. First, how close is the area in question to the home? Second, is the area in question included in an enclosure? Third, what are the uses to which the area is put? Finally, what steps have been taken to protect the area from observation by people passing by? See *id.*; see also *State v. Rogers*, 161 Vt. at 241-42, 638 A.2d at 572 (using *Dunn* factors to determine that garden is within curtilage of house).

The definition of a particular home's curtilage is a mixed question of law and fact. See *Rogers*, 161 Vt. at 241, 638 A.2d at 572. This Court will defer to the trial court's findings of fact; conclusions of law supported by those findings will be affirmed unless clearly erroneous. See *In re A.F.*, 160 Vt. 175, 178, 624 A.2d 867, 869 (1993).

Concerning the first factor, defendant stresses that the officer was standing five to ten feet from the lawn in an area just inside the woods, which was in closer proximity to defendant's home than the garden was to the defendant's home in *Rogers*. See 161 Vt. at 241, 638 A.2d at 572 (giving deference to trial court finding garden was within curtilage). In *Rogers*, officers viewed the garden from the surrounding woods, approximately 150 feet away from the defendant's residence. See *id.* We held in that case no warrant was needed to view the curtilage from an unimproved area where no expectation of privacy exists. *Id.* at 249, 638 A.2d at 576-77. The distance from a house to the area in question, while a useful factor in the analysis, is by no means dispositive since the three other factors must also be considered. Although, in the instant case, the officer was closer to the house than were the officers in *Rogers*, application of the other three factors convinces us the officer was not within the curtilage of defendant's home.

The second factor—whether the area is within an enclosure—weighs in favor of finding that the officer was not within the curtilage of defendant's home. The only fencing behind defendant's house was ornamental, and stood behind the house on the lawn. The wooded area where the officer stood as well as the marijuana that he found was located beyond the ornamental fence. Although we have noted other courts' holdings that a natural boundary, such as woods, may define the curtilage, *id.* at 242, 638 A.2d at 573, we have also held that, taken alone, a natural boundary does not create a reasonable expectation of privacy. See *id.* at 247, 638 A.2d at 576.

The Court is likewise not persuaded that the third factor — uses to which the area is put — favors defendant. Although the trees were trimmed to make it easier to walk in the area behind defendant's yard, there is no evidence the area was used for activities such as picnics, barbecues or other "privacies of life." *Id.* at 241, 638 A.2d at 572. The Court therefore concludes the officer's vantage point was not within the curtilage.

The final factor that courts consider, whether steps have been taken to protect the area from observation, also supports the conclusion that the officer did not enter the curtilage of defendant's home. Defendant did not erect any fences or walls that would obstruct the view of his yard. In fact, by removing low branches from trees in the five-to-ten-foot wooded border around defendant's yard, he actually enhanced visibility of his yard from the wooded area. Although the wooded border and yard are not visible from the thicker outlying woods, as noted above, this Court has held that natural boundaries do not create a per se expectation of privacy from "examination by a person located in the woods." *Id.* at 243, 638 A.2d at 573. Without actually entering the curtilage, hikers, berry pickers, and other members of the public using the network of paths behind defendant's house could have easily seen defendant's yard and house from the wooded border. Defendant's failure to post the area behind his house, either his yard or the wooded border, reduced his expectation of privacy.

Given that defendant made no affirmative effort to prevent entry into the wooded area bordering his yard, we hold that he had no reasonable expectation of privacy regarding the spot from which the officer viewed the marijuana plant. Moreover, having located the plant from outside the curtilage in the woods, the officer then was able to view the plant when he returned to the public road.

## II.

We cannot conclude that the officer's failure to include in the application for the warrant information concerning his futile first attempt on September 17th amounts to an attempt to exclude exculpatory information in the search warrant affidavit in violation of *Franks v. Delaware*, 438 U.S. 154 (1978). The failure of the first search did not pertain to the informant's reliability because the officers did not look in the place the informant described. Defendant's attempt to analogize the instant case to *State v. Dupaw*, 134 Vt. 451,

365 A.2d 967 (1976), is unpersuasive. In that case, information provided by an informant was utterly devoid of factual support. *Id.* at 452, 365 A.2d at 968. The informant's factual assertions here, however, were substantiated by the officer upon returning to the area with the informant. When the informant personally showed the officer where to look, the search revealed what the informant said it would. Furthermore, the officer's first-hand knowledge of the marijuana growing in defendant's yard was lawfully obtained information, which by itself was sufficient to establish probable cause to issue a warrant. *State v. Moran*, 141 Vt. 10, 16, 444 A.2d 879, 882 (1982).

■ It is true that officers are expected to include all salient facts of an investigation in the warrant affidavit. Yet, here the omitted information did not negate or discredit the validity of the officer's sworn statements, which as noted above were sufficient to establish probable cause.

### III.

Finally, we address defendant's argument that there is no nexus between the plant in the yard and the house. Defendant argues the officer's observation of a marijuana plant on his lawn is insufficient to establish probable cause that evidence of a crime would be found within the home. Defendant stresses the absence of cultivation materials near the plant that would create the "necessary nexus between the house and the planting site." *State v. Weiss*, 155 Vt. 558, 563, 587 A.2d 73, 75 (1990).

■ The very fact that a plant appears cultivated, as opposed to untended, supports an inference that materials for the manufacture and cultivation of marijuana exist at the residence. See *id.* The marijuana plant was not simply growing in an untended part of defendant's property. It was in defendant's back yard near his house. The lawn around the plant was mowed, and the plant was tied with fishing line. This indicates, not only knowledge of the illegal plant's existence, but also that it was carefully cultivated. Combined with the informant's information about the paraphernalia in defendant's house, there was ample reason to believe that evidence of a crime existed inside the house. We find no error.

*Affirmed.*