## STATE of Vermont v. James Earl WARNER

[773 A.2d 273]

No. 00-300

March 26, 2001. Defendant James Warner appeals a conviction for driving under the influence of intoxicating liquor (DUI), 23 V.S.A. § 1201(a)(2). Shortly after his arraignment, defendant filed a motion to suppress the evidence gathered as a result of the traffic stop leading to his DUI arrest, claiming that the arresting officer lacked reasonable suspicion to effect a stop of defendant's vehicle, and, therefore, the evidence was obtained in violation of Chapter I, Article 11 of the Vermont Constitution and the Fourth Amendment to the United States Constitution. The Addison District Court disagreed, and defendant entered a conditional plea of guilty, reserving the right to appeal the trial court's denial of his motion to suppress. The court accepted the plea and entered judgment

against defendant. We agree with defendant that the officer lacked reasonable suspicion to justify the stop, and therefore reverse.

The uncontested facts in the case are as follows. On May 2, 2000, sometime after 8:00 p.m., Middlebury Police Officer Sweet responded to a report of an attempted automobile break-in at an apartment complex located on Boardman Street. The complainant informed the police that the suspect had run off into the nearby woods. Shortly after arriving at the scene of the alleged attempted break-in, Officer Sweet left the apartment complex and proceeded to drive around the area. Another officer radioed Officer Sweet to inform him that a car had just driven by on Boardman Street, heading toward Foote Street. Soon thereafter, Officer Sweet observed a car which had just turned off Boardman Street onto Foote Street. At this point, twenty minutes had elapsed since the break-in had been reported. The officer began to follow the car south on Foote Street, and while doing so called in the car registration and discovered that it belonged to the defendant, James Warner. The officer testified at the suppression hearing that he had known the defendant, who was 48 years old on the night in question, for many years — ever since defendant had been in high school. He also testified that he was aware of defendant's health condition, consisting of a heart condition and having had several of his toes amputated, and that the defendant's home was located in the direction they were traveling. After traveling for approximately two miles, the car turned off the road into a driveway, and the driver turned its headlights off. The officer continued down Foote Street, turned onto Route 7, and then stopped to observe the parked car. After a few minutes, the officer observed the car's headlights turn on, and then the car resumed travel south on Foote Street. The officer again followed

the car for a short distance, and then effected a traffic stop of the vehicle. At that time, the officer had not observed defendant engaged in any unlawful conduct. He testified that he stopped defendant's car because "it was suspicious activity to me that — you know, maybe the operator had a reason to avoid me."

At the suppression hearing, the trial court judge distinguished this case from *State v. Welch*, 162 Vt. 635, 636, 650 A.2d 516, 517-18 (1994) (mem.), in which we held that a police stop of an individual, when the officer had not witnessed any criminal activity by the suspect, was not based on a reasonable and articulable suspicion of criminal activity and therefore not justified. The judge distinguished *Welch* on the grounds that here, unlike *Welch*, there had been a recent report of criminal activity in the area, which, in his opinion, was a "significant difference." The court found that, in light of the fifteen to twenty minute time period between the break-in report and the sighting of defendant's car, and the "furtive" acts of defendant, that the officer had reasonable and articulable suspicion to effect a stop of defendant. Thus, the motion to suppress was denied.

In this appeal, defendant asserts that neither the officer's observations nor defendant's proximity to the reported break-in suffice to provide the reasonable suspicion of criminal activity necessary to support a permissible stop of defendant's vehicle. He contends that the suspicion the officer held in this case was no more reasonable nor articulable as to criminal activity than the suspicion we found insufficient in *Welch* and *State v. Emilo*, 144 Vt. 477, 479 A.2d 169 (1984). The State responds that the suspicious activity by defendant, in pulling into a driveway, turning off the headlights, sitting there for a few minutes, turning the headlights back on, and then departing, viewed in the context of his

proximity to the reported break-in, was sufficient to provide the officer with a "reasonable, articulable suspicion."

We have repeatedly recognized that, for a police officer's warrantless traffic stop to be justified, the officer must possess a reasonable and articulable suspicion that the individual to be stopped is engaged in criminal activity. *State v. Crandall*, 162 Vt. 66, 70, 644 A.2d 320, 323 (1994); see also *Welch*, 162 Vt. at 636, 650 A.2d at 517. In determining whether a stop is justified, "the totality of the circumstances — the whole picture — must be taken into account." *State v. Paquette*, 151 Vt. 631, 635, 563 A.2d 632, 635 (1989) (citation and internal quotations omitted). The United States Supreme Court has recently addressed this issue as well, reaffirming that "[a] search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." *City of Indianapolis v. Edmond*, 531 U.S. 32, 37, 121 S. Ct. 447, 451 (2000). The level of suspicion required to justify a stop need not rise to the level required to prove guilt by a preponderance of the evidence, but it must be more than an inchoate and unparticularized suspicion or hunch. *Welch*, 162 Vt. at 636, 650 A.2d at 517.

Both the State and the defendant rely primarily upon *Welch* and *Emilo* in asserting their contrasting arguments. In *Welch*, three police officers were approached by an individual reporting the following: that he had seen people walking around an older pickup truck in a driveway, and "[h]e thought that that was suspicious," leading him to drive by again. *Id.* at 635, 650 A.2d at 517. He reported that he then observed the truck in a different driveway, with the occupants either not present or inside the truck. The individual also reported seeing objects in the back of the truck, without being able to identify these objects. While relaying this information to the officers, the truck in question drove by them, and one of the officers proceeded to follow it for two miles before pulling it over. The officer testified that there had been no unlawful or suspicious conduct by the truck while he followed it, and that the reason he pulled it over was to ask what the driver had been doing going into and out of driveways. We held that the trial court's denial of the motion to suppress was error, as "an investigatory stop may not be based solely on the unsupported hunch of an informant." *Id.* at 636, 650 A.2d at 518. While we recognized that citizen information about activity they deem suspicious may be presumed reliable, the activity reported was not itself indicative of criminal conduct, and therefore the defendant's activities did not give rise to a reasonable and articulable suspicion of wrongdoing. *Id.*

In *Emilo*, we addressed the reasonableness of a stop based on an officer's observation of a car with an out-of-state license plate traveling on a rural road after midnight. In that case, an officer spotted an unfamiliar car while returning home after responding to a call reporting a possible break-in at a local store. After investigating the store with another officer, they determined that no attempted break-in had been made. When the officer subsequently spotted the car during his drive home, the car was not operating erratically or in an unusual manner, and there were no allegations of any other traffic violations involving the car. Nevertheless, the officer effected a stop of the car. We upheld the finding by the trial court that the officer lacked reasonable suspicion of wrongdoing regarding the car and its occupants. We stated that the officer's " 'suspicion' that the [car] did not belong in the particular area in the early morning hours, without more, clearly falls outside of an 'articulable and reasonable' suspicion of some criminal wrongdoing." *Emilo*, 144 Vt. at 481, 479 A.2d at 171. We held that the defendant's motion to suppress should therefore have been granted.

The State argues that the present case is stronger than *Emilo* because, unlike in *Emilo*, the officer here observed "suspicious activity" in the form of defendant's pulling into a driveway other than his own, turning off his lights for a few minutes, and then resuming his travel down the road. However, unlike the situation in *Emilo*, the officer here knew the car belonged to a resident of the area and was headed in the direction of the owner's home.

The State also argues this case can be distinguished from *Welch*, in that there was here a report of criminal activity in the area, as well as the aforementioned "suspicious" activity. Our case law requires that there be suspicion of criminal activity or wrongdoing and not that the officer simply be suspicious for reasons unconnected to any suspected wrongdoing. Here, as in *Emilo*, the officer had no basis other than the usual paucity of motor vehicle traffic on the streets in question to tie the defendant's car to the alleged crime. There are any number of lawful reasons why a person driving down a road would not want to be followed by a police officer. By the officer's own admission, he did not believe there was anything illegal about the activities he observed defendant engage in prior to the stop. The officer made no claim that he believed the defendant may have been the person alleged to have attempted the break-in and who then ran off into the woods, which was reasonable given his understanding of the defendant's physical condition. Nor did the proximity of the defendant's lawful actions to the reported break-in scene provide sufficient basis to suspect his involvement in the reported criminal activity. The officer offered only that "there's always the possibility that someone running like that is going to a car, there's a car waiting, or whatever."

We agree with defendant that, in this case, the officer lacked a reasonable and articulable suspicion of criminal activity to justify the stop. Here, we have a local man, driving down the public street at 8:30 in the evening, traveling in the direction of his home (a fact known to the officer), who stops in a driveway approximately thirty minutes after and approximately two miles from reported criminal activity in which there was no reason to suspect he was involved. As was the case in *Welch* and *Emilo*, the circumstances of this case fail to give rise to a reasonable and articulable suspicion of criminal activity. Therefore, the evidence obtained as a result of the stop should have been suppressed. See *Welch*, 162 Vt. at 636, 650 A.2d at 518 (failure to establish reasonable and articulable suspicion of criminal activity requires suppression of evidence obtained from stop); *Emilo*, 144 Vt. at 484, 479 A.2d at 173 (same).

*The judgment of the district court is vacated, and the conviction reversed.*